IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 04-cv-00791-WDM-BNB

STEPHEN H. ADAMS,

Plaintiff,

v.

LANCE DYER, Aurora Police Department,
MICHAEL GASKILL, Aurora Police Department,
CHRISTOPHER STINE, Aurora Police Department,
GERALD JOHNSGUARD [SIC], Aurora Police Department,
RICHARD DAY, Aurora Police Department,
WILLIAM HELLER, Aurora Police Department,
JUSTIN THULL, Aurora Police Department,
JULIE STAHNKE, Aurora Police Department,
LIEUTENANT STEPHENSON [SIC], Aurora Police Department,
CAPTAIN CLOYDE [SIC], Chief/Captain of Aurora Police Department in Supervisory, City of Aurora Police Department, and
CITY OF AURORA, COLORADO,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This matter is before me on **Defendants' Motion for Summary Judgment** (the "Motion"), filed April 18, 2005. I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

## I. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S.

144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, to designate specific facts showing that there is a genuine issue for trial. Id. at 324.

In addition, I must liberally construe the pleadings of a *pro se* plaintiff. Haines v. Kerner, 104 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

## II. UNDISPUTED MATERIAL FACTS[1]

1. On January 30, 2003, at approximately 3:45 a.m., defendant Gaskill, a police officer for the Aurora Police Department, responded to a domestic disturbance call at 172 North Kenton Street, apartment number P-107. *Memorandum in Support of Motion for Summary Judgment*

[1] The plaintiff does not provide any evidence to create a material fact dispute. Therefore, the undisputed material facts are taken from the defendants' statement of facts with supporting evidence.

("Memorandum"), Exhibit E, ¶¶ 1-3. While en route to that address, Gaskill heard over the radio that defendant Stine, also an Aurora police officer, had already arrived at the scene. Id. at ¶ 4. Officer Stine subsequently radioed for other responding officers to "step it up" and stated that the situation was "code one," which means that an officer is down or in danger of death. Id. Gaskill activated his patrol car's lights and siren and continued to the scene in emergency mode. Id.

2. Upon arrival, Gaskill saw that the front door of the apartment was open. Id. at ¶ 5. He proceeded inside and encountered a female in a hallway that led to a back room. Id. The female motioned with her finger to the back room. Id. Gaskill could hear the sounds of a struggle coming from the room. Id.

3. Upon entering the back room, Gaskill observed Officers Stine and Dyer struggling with the plaintiff. Id. at ¶ 6. The plaintiff was on all fours and had control of both of Stine's arms, which he held beneath him. Id. Dyer was trying to pull one of the plaintiff's arms from beneath him in an effort to free Stine from the plaintiff's grip. Id. Stine shouted to Gaskill that they could not get the plaintiff's arms from underneath him and that the plaintiff had taken Dyer's gun from him. Id.

4. Believing that the plaintiff had Dyer's gun, Gaskill shouted to the plaintiff to immediately show his hands. Id. at ¶ 7. The plaintiff refused to comply with Gaskill's orders. Id. Gaskill drew his weapon, repeating the command for the plaintiff to show his hands. Id. Gaskill decided not to shoot because of the close proximity of Dyer and Stine. Id. Gaskill re-holstered his weapon and tried to pull the plaintiff's arms from beneath him, but could not do so. Id. Gaskill then took his police baton and jabbed the plaintiff twice in the right side of his rib cage. Id. During this time, Gaskill was repeatedly shouting orders to the plaintiff to reveal his hands.

Id. The plaintiff refused to show his hands or remove his grip from Stine. Id. Gaskill struck the plaintiff's elbow with the baton. Id.

5. In response to the elbow strike, the plaintiff put out his right hand, which Gaskill immediately grabbed. Id. at ¶ 8. Gaskill then passed control of the plaintiff's hand to Dyer, who by that time had retrieved the plaintiff's left hand from beneath his body. Id. Dyer then placed the plaintiff in handcuffs. Id.

6. Gaskill determined that the plaintiff was a continuing threat to everyone at the scene, including the female in the apartment. Id. at ¶ 9. The officers immediately escorted the plaintiff out of the apartment and placed him in the rear of the patrol car. Id. The plaintiff was placed into the patrol car without incident, in a manner consistent with the normal operating procedures of the Aurora Police Department. Id. at ¶ 10.

7. Gaskill did not throw the plaintiff into the rear of the patrol car. Id. The plaintiff did not hit his head or suffer any other injury as a result of being placed into the patrol car. Id.

8. Defendant Jonsgaard[2] was supervising the evening patrol shift for the Aurora Police Department on January 30, 2003. Id. at Exhibit F, ¶ 2. He responded to the incident on Kenton Street at approximately 3:30 a.m. Id. at ¶ 3. Upon arrival, he was briefed by Aurora police officers that the plaintiff had been arrested after a struggle with police. Id. At approximately 3:45 a.m., Jonsgaard was contacted by Officer Thull, who informed him that the plaintiff had ingested a large quantity of unknown pills. Id. at ¶ 4. At approximately 4:15 a.m., he responded to the emergency room at Columbia South Hospital to determine the plaintiff's condition. Id.

[2]The defendants assert, and the plaintiff does not dispute, that defendant Gerald Johnsguard's last name is correctly spelled "Jonsgaard." *Memorandum*, p. 1. Therefore, I refer to the defendant as Gerald Jonsgaard.

Jonsgaard left the hospital after having a short conversation with the plaintiff. Id. at ¶¶ 4-6. Jonsgaard had no part in the arrest or transportation of the plaintiff. Id. at ¶ 7.

9. Defendants Heller and Stahnke were assigned to the evening patrol shift for the Aurora Police Department on January 30, 2003. Id. at Exhibit G, ¶ 2; Exhibit H, ¶ 2. They responded to the incident at approximately 3:45 a.m. Id. at Exhibit G, ¶ 3; Exhibit H, ¶ 3. The plaintiff was removed from the scene almost immediately upon their arrival. Id. at Exhibit G, ¶ 4; Exhibit H, ¶ 4. Heller and Stahnke did not have physical contact with the plaintiff at any time. Id. at Exhibit G, ¶¶ 5-9; Exhibit H, ¶¶ 5-8. They did not communicate with the plaintiff in any manner. Id.

10. Defendant Thull was assigned to the evening patrol shift for the Aurora Police Department on January 30, 2003. Id. at Exhibit I, ¶ 2. He responded to the incident at approximately 3:45 a.m. Id. at ¶ 3. The plaintiff was removed from the scene almost immediately upon his arrival. Id. at ¶ 4. Thull followed Gaskill to the Aurora City Jail in his own vehicle. Id. at ¶ 5. He had no physical or verbal contact with the plaintiff. Id. at ¶¶ 6-8.

12. Defendant Day is the detective who was assigned to investigate the arrest of the plaintiff. Id. at Exhibit J, ¶ 2. He did not have physical contact with the plaintiff at any time, nor did he communicate with the plaintiff in any manner. Id. at ¶¶ 3-6.

13. Defendant Stevens[3] is a Lieutenant with the Aurora Police Department. Id. at Exhibit K, ¶ 1. He was not present for the plaintiff's arrest. Id. at ¶ 2. He was contacted by defendant Cloyd on April 14, 2003, and informed that an individual named Vontrice DeRuso

[3]The defendants assert, and the plaintiff does not dispute, that defendant Lieutenant Stephenson's last name is correctly spelled "Stevens." *Memorandum*, p. 1. Therefore, I refer to the defendant as Lieutenant Stevens.

wished to make a complaint concerning the actions of the police officer who arrested the plaintiff on January 30, 2003. Id. Stevens conducted an interview with Ms. DeRuso on April 17, 2003. Id. at ¶ 3. Based on the information he obtained from Ms. DeRuso, Stevens directed another officer to conduct a preliminary investigation into the allegations. Id. Stevens reviewed the information gathered from the preliminary investigation and determined that the arresting officers acted within policy. Id. at ¶ 4. These actions constitute Stevens' complete involvement with the plaintiff. Id. at ¶ 5. Stevens has never been a final policymaker for the City of Aurora. Id. at ¶ 1.

14. Defendant Cloyd[4] is a Division Chief for the Aurora Police Department. Id. at Exhibit L, ¶ 1. He was not present for the plaintiff's arrest. Id. at ¶ 2. He was contacted by Ms. DeRuso on April 15, 2003. Id. Ms. DeRuso informed him that she wished to make a complaint concerning the actions of the police officers who arrested the plaintiff on January 30, 2003. Id. Cloyd immediately notified Stevens and directed him to contact Ms. DeRuso and, if necessary, conduct an appropriate investigation of her concerns. Id. at ¶ 3. After reviewing the investigation summary, Cloyd concurred with the recommendation of Stevens. Id. at ¶ 4. Cloyd then contacted Ms. DeRuso and informed her that the internal investigation had determined that no policies were violated during the plaintiff's arrest. Id. at ¶ 5. Ms. DeRuso thanked him. Id. These actions constitute Cloyd's complete involvement with the plaintiff. Id. at ¶ 6. Cloyd has never been a final policymaker for the City of Aurora. Id. at ¶ 1.

---

[4]The defendants assert, and the plaintiff does not dispute, that defendant Captain Cloyde's last name is correctly spelled "Cloyd." *Memorandum*, p. 1. Therefore, I refer to the defendant as Cloyd.

15. On March 26, 2004, a Colorado state jury convicted the plaintiff of second degree assault to a peace officer (defendant Dyer) without provocation. Id. at Exhibit A. The plaintiff was also convicted of attempt to disarm a peace officer and resisting arrest. Id. On June 4, 2004, the plaintiff was sentenced to thirteen years imprisonment. Id. at Exhibit B.

The plaintiff is currently incarcerated by the Colorado Department of Corrections at the Sterling Correctional Facility. He filed his Prisoner Complaint (the "Complaint") on April 19, 2004. The Complaint alleges three claims. Claim One alleges "Violation of 4th/14th Amendments/Excessive Force" against defendants Dyer, Stine, and Gaskill based on their actions when arresting the plaintiff on January 31, 2003.[5] Claim Two alleges "Violation of 4th/14th Amendments/Use of Excessive Force" against defendants Dyer, Gaskill, Stine, Jonsgaard, Day Heller, Thull, and Stahnke based on their actions after the plaintiff was handcuffed. Claim Three alleges "Violation of 8th Amend: Unequal Protection Clause Violation of 14th/Amend./Excessive force/failure to protect." Claim Three is brought against defendants Stevens and Cloyd for condoning the actions of the other defendants. The plaintiff seeks compensatory and punitive damages in the amount of 12.5 million dollars.

## III. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation

---

[5]There is some confusion regarding whether the arrest happened on January 30, 2003, or January 31, 2003. I will refer to the arrest date as January 30, 2003. The exact date is not material to my analysis of the summary judgment motion.

> of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A. Heck v. Humphrey

The defendants assert that the plaintiff's claims against defendants Dyer, Stine, and Gaskill must be dismissed "because Plaintiff cannot demonstrate that his conviction has been reversed on direct appeal or otherwise invalidated as required by Heck v. Humphrey," 512 U.S. 477 (1994). *Memorandum*, p. 10, § B.

Heck v. Humphrey holds that "[w]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487. However, if "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." Id.

> For example, a [§ 1983] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the . . . plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.

Id. at 487 n.7 (emphasis in original) (internal citations omitted).

Claims One and Two are asserted against defendants Dyer, Stine, and Gaskill. Claim One alleges that these defendants violated the plaintiff's constitutional rights when they used excessive force while arresting him in the back room. Claim Two alleges that Dyer, Stine, Gaskill, and others violated the plaintiff's constitutional rights when they used excessive force after the plaintiff entered the apartment hallway, while he was in the parking lot, while he was being placed into the police car, and while he was being removed from the police car.

The defendants provide copies of Jury Verdicts which show that an Arapahoe County jury found the plaintiff guilty of resisting arrest; attempting to disarm a peace officer; and second degree assault upon Officer Dyer, a peace officer. *Memorandum*, Exhibit A. The defendants argue that (1) a judgment in favor of the plaintiff would necessarily imply the invalidity of these convictions, and (2) the claims are barred by Heck because the plaintiff cannot demonstrate that his convictions have been reversed or otherwise invalidated.

It is unclear from the defendants' evidence that a judgment in favor of the plaintiff would necessarily imply the invalidity of the convictions. There is no supporting affidavit or other evidence to show that the convictions stemmed from the arrest on January 30, 2003. Even assuming the convictions arose from that arrest, there is no evidence as to whether the convictions address actions that occurred with respect to the back room, the hallway, the parking lot, the patrol car, or otherwise.

Because the defendants have failed to produce evidence that a judgment in favor of the plaintiff would necessarily imply the invalidity of his convictions, I need not address their argument that the claims against Dyer, Stine, and Gaskill must be dismissed "because Plaintiff cannot demonstrate that his conviction has been reversed on direct appeal or otherwise

invalidated as required by Heck v. Humphrey." I respectfully RECOMMEND that the Motion be DENIED to the extent it seeks summary judgment in favor of defendants Dyer, Stine, and Gaskill pursuant to Heck v. Humphrey .

**B. Personal Participation**

The defendants assert that the plaintiff's claims against defendants Jonsgaard, Day, Heller, Thull, Stahnke, Stevens, and Cloyd must be dismissed because the plaintiff cannot demonstrate that these defendants personally participated in the alleged constitutional violations. Claims Two and Three are brought against these defendants. Claim Two alleges excessive force by Jonsgaard, Day, Heller, Thull, and Stahnke. Claim Three is brought against defendants Stevens and Cloyd for condoning the unconstitutional actions of the other defendants.

An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

It is undisputed that (1) defendant Jonsgaard's only contact with the plaintiff was to briefly question him at Columbia South Hospital; (2) defendants Day, Heller, Thull, and Stahnke did not have any physical contact with the plaintiff, and did not communicate with him in any manner; (3)

defendants Stevens and Cloyd merely determined that the officers who arrested the plaintiff did so consistent with the policies and procedures of the Aurora Police Department; and (4) neither Stevens nor Cloyd participate in the final policy making for the City of Aurora. Thus, these defendants did not have any direct responsibility for the alleged constitutional violations.

The plaintiff does not provide any evidence to create a factual dispute regarding whether these defendants had any direct responsibility for the alleged constitutional violations. I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment in favor of defendants Jonsgaard, Day, Heller, Thull, Stahnke, Stevens, and Cloyd for failure to participate in the alleged constitutional violations.

**C. Qualified Immunity**

The defendants argue that “Plaintiff’s Second Claim for Relief against Defendant Gaskill must be dismissed because ‘not every push or shove amounts to a constitutional violation,’ and Defendant Gaskill is therefore entitled to qualified immunity on this claim.” *Memorandum*, p. 15, § C. The defendants’ argument addresses both the plaintiff’s First and Second Claims for Relief. Out of an abundance of caution, I will analyze the defendants’ argument as to the plaintiff’s First and Second Claims for Relief.

Qualified immunity shields government officials from liability for civil damages provided that their conduct when committed did not violate “clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, “[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an

official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

When analyzing the issue of qualified immunity, the court must first determine whether the plaintiff has sufficiently asserted a violation of a constitutional right. If the plaintiff has proven such a violation, only then does the court inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999). Accordingly, I look to the record to determine if the plaintiff has sufficiently asserted a violation of his constitutional rights.

**1. Claim One**

Claim One alleges that the plaintiff was subjected to excessive force while being arrested. Specifically, the plaintiff alleges that as he was being handcuffed, defendant Gaskill beat the plaintiff with his nightstick until the plaintiff became unconscious.

Excessive force claims that arise in the context of an arrest, investigatory stop, or other seizure are governed by the Fourth Amendment's objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989). The Supreme Court has described the objective reasonableness standard as follows:

> Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue,

> whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
>
> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if in may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Id. at 396-397 (quotations and citations omitted).

The undisputed evidence establishes that Gaskill reasonably believed that the plaintiff was actively and violently resisting arrest, and reasonably believed that the plaintiff had Officer Dyer's gun. After the plaintiff repeatedly ignored Gaskill's orders to reveal his hands, Gaskill jabbed the plaintiff twice in the rib cage and then once on the elbow with his baton in order to gain control of the plaintiff. Under these circumstances, the amount of force used by Gaskill was reasonable. The plaintiff does not provide any evidence to create a factual dispute regarding the reasonableness of the force used by Gaskill.

I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks

summary judgment in favor of defendant Gaskill on Claim One. Because Claim One does not assert a constitutional violation, I need not address the issue of qualified immunity. Wilson, 526 U.S. at 609; Butler, 172 F.3d at 745.

**2. Claim Two**

Claim Two alleges that Gaskill and others violated the plaintiff's constitutional rights when they used excessive force after the plaintiff entered the apartment hallway, while he was in the parking lot, while he was being placed into the police car, and while he was being removed from the police car.

Gaskill provides evidence which establishes that the plaintiff was placed into the patrol car without incident, that Gaskill did not throw the plaintiff into the into the rear of the patrol car, and that the plaintiff did not hit his head or suffer any other injury as a result of being placed into the patrol car. Thus, the evidence establishes that Gaskill did not use excessive force when placing the plaintiff into the patrol car. The plaintiff does not provide any evidence to create a factual dispute regarding the amount of force used by Gaskill when placing the plaintiff into the police car. Accordingly, I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment in favor of defendant Gaskill on Claim Two's allegations regarding placement into the police car. Because the allegations regarding placement into the police car do not assert a constitutional violation, I need not address whether Gaskill is entitled to qualified immunity on this portion of Claim Two. Id.

The defendants do not address Gaskill's involvement in the alleged excessive force after the plaintiff entered the apartment hallway, while he was in the parking lot, and while he was being removed from the police car. Therefore, I do not analyze this portion of Claim Two as

against Gaskill. I respectfully RECOMMEND that the Motion be DENIED to the extent it seeks summary judgment in favor of defendant Gaskill on Claim Two's allegations regarding excessive force after the plaintiff entered the apartment hallway, while he was in the parking lot, and while he was being removed from the police car.

**D. City of Aurora**

The defendants argue for judgment in favor of the City of Aurora solely on the basis that a municipality cannot be liable where the plaintiff has suffered no constitutional injury by its police officers. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Because I recommend that summary judgment be denied in whole or in part as to defendants Dyer, Stine, and Gaskill, I respectfully RECOMMEND that the Motion be DENIED insofar as it seeks summary judgment in favor of defendant City of Aurora, Colorado.

**IV. CONCLUSION**

I respectfully RECOMMEND that Defendants' Motion for Summary Judgment be GRANTED IN PART and DENIED IN PART as follows:

(1) DENIED to the extent it seeks summary judgment in favor of defendants Dyer and Stine;

(2) GRANTED to the extent it seeks summary judgment in favor of defendants Jonsgaard, Day, Heller, Thull, Stahnke, Stevens, and Cloyd;

(3) GRANTED to the extent it seeks summary judgment in favor of defendant Gaskill on Claim One;

(4) GRANTED to the extent it seeks summary judgment in favor of defendant Gaskill on Claim Two's allegations regarding placement into the police car;

(5) DENIED to the extent it seeks summary judgment in favor of defendant Gaskill on the allegations of Claim Two regarding excessive force after the plaintiff entered the apartment hallway, while he was in the parking lot, and while he was being removed from the police car; and

(6) DENIED insofar as it seeks summary judgment in favor of defendant City of Aurora, Colorado.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 27, 2006.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge